# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**EDWARD BRUCE HOOPINGARNER,**

    Plaintiff,

v.                                                Case No. 8:11-cv-397-T-30TGW

**CORINTHIAN COLLEGES, INC.,**

    Defendant.

_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (Dkt. 14), and Plaintiff's Response (Dkt. 31). Upon considering Defendant's Motion, Plaintiff's Response, and being otherwise advised in the premises, the Court concludes that the motion should be granted in part, and denied in part, as stated herein.

### Background

Plaintiff Edward Bruce Hoopingarner was employed by Defendant Corinthian Colleges, Inc., d/b/a Everest University ("Everest") as a medical assistant instructor. He was hired on December 23, 2008. Defendant contends that Plaintiff was required to work shifts from 1:00pm until 10:00pm, and that he repeatedly arrived late and left early. Moreover, Everest claims that Plaintiff took numerous unauthorized absences, including taking time off to help his wife with car trouble, to help her after she locked herself out of their house, and to confront his wife's lover. Defendant verbally counseled Plaintiff about his attendance

problems a number of times, and then, in February, 2010, Plaintiff was given a formal, written warning that further attendance issues could result in his termination. After his attendance problems nonetheless continued, he was fired for excessive absenteeism on August 25, 2010.

Plaintiff denies that he repeatedly showed up late for work, contending that his actual start time was 2:00 pm. Moreover, although he admits that he sometimes left early and accrued a number of absences, he contends that he was in reality fired for taking leave protected by the Family Medical Leave Act ("FMLA"). Specifically, he contends that he was fired for: (1) taking FMLA leave to care for his ailing mother; (2) taking several absences in order to care for his sick wife; and/or (3) taking additional absences in order to attend to his own "serious health conditions."

Plaintiff brings FMLA interference and retaliation claims against Everest.

## Summary Judgment Standard

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action

will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson,* 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248; *Hoffman v. Allied Corp.,* 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

**Discussion**

### A.  Legal Standards

In an FMLA interference claim, "an employee asserts that his employer denied or otherwise interfered with his substantive rights under the [FMLA]." *Strickland v. Water Works & Sewer Bd. of City of Birmingham,* 239 F.3d 1199, 1206 (11th Cir. 2001). To establish an interference claim, "an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit [FMLA leave] denied;" the employer's motives are irrelevant. *Id.* at 1206-07. Notably, even if the requested leave was granted a plaintiff may nonetheless establish an interference violation if said plaintiff can show that his taking FMLA leave was later used as a negative factor in his employer's decision to terminate his employment. 29 C.F.R. § 825.220(c); *Bachelder v. America West Airlines, Inc.,* 259 F.3d 1112, 1125 (9th Cir. 2001) (Plaintiff "need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her.")

In contrast, an employee who brings an FMLA retaliation claim "asserts that his employer discriminated against him because he engaged in activity protected by the [FMLA]." *Strickland,* 239 F.3d at 1206. In order to state a retaliation claim, in the absence of direct evidence of the employer's intent, a plaintiff must show that: (1) he engaged in protected activity; (2) he suffered an adverse employment decision; and (3) the decision was causally related to his protected activity. *Id.* at 1207, citing *Parris v. Miami Herald,* 216 F.3d 1298, 1301 (11th Cir. 2000).

Once a plaintiff establishes a prima facie case of retaliation, the burden then shifts back to his employer to provide a legitimate, non-discriminatory reason for its action, which the employee may then rebut by showing his employer's proffered reason to be a mere pretext for retaliation. *Id.; McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-804 (1973).

**B.     Plaintiff's FMLA Leave to Take Care of His Ailing Mother**

In April, 2010, Plaintiff requested FMLA leave to care for his ailing mother. Defendant later granted Plaintiff's request, and Plaintiff took leave from April 19, 2010, to May 18, 2010. Plaintiff contends that Defendant interfered with his FMLA rights by considering this leave as a factor in deciding to fire him. Plaintiff also claims that Defendant retaliated against him by terminating his employment in retaliation for taking this leave.

Here, the undisputed evidence shows both that Defendant granted Plaintiff FMLA leave to care for his ailing mother, and that Plaintiff's taking such leave was not used against him in Everest's decision to terminate Plaintiff's employment. Indeed, Plaintiff admitted as much in his deposition:

> Q.   Your complaint alleges that you were wrongfully terminated and denied FMLA rights. Is that your understanding, that's why you've sued?
> A.   Yes.
> Q.   Okay. But you acknowledge that this FMLA request [to care for your mother] was granted and you received the leave; correct?
> A.   Correct.
> ...Q.   ...Do you have any basis to believe that Corinthian used your leave time, [in order to care for your mother] your absence, during this leave-
> A.   No.

> Q. –in order to terminate you?
> A. No, I don't believe so.

Plaintiff Depo., p. 94-95. As there is no genuine issue of material fact with respect to the question of whether Plaintiff's FMLA leave to care for his mother was somehow used against him, Defendant is entitled to summary judgment on this issue. Specifically, the Court concludes that, as a matter of law, Plaintiff's FMLA leave to care for his ailing mother fails to support an FMLA interference, and/or retaliation claim.

### C.  Plaintiff's Absences to Care for His Ailing Wife

The FMLA mandates leave to provide needed care to a spouse with a serious health condition. 29 U.S.C.A. § 2612(a)(1). The regulations clarify that needed care includes the provision of both physical and psychological care, and situations where "the family member is unable to care for his or her own basic medical, hygienic, or nutritional needs or safety, or is unable to transport himself or herself to the doctor." 29 C.F.R. § 825.124. It also includes "providing psychological comfort and reassurance which would be beneficial to...a spouse...with a serious health condition who is receiving inpatient or home care." *Id.*

Plaintiff claims that he needed to take several absences to care for his sick wife,[1] and that Defendant used these absences against him in deciding to terminate his employment, allegedly subjecting Defendant to liability for FMLA interference and retaliation claims.

---

[1] It is undisputed that Mrs. Hoopingarner suffers from various health conditions; specifically, Manic Depression, Post Traumatic Stress Disorder, Attention Deficit Disorder, anxiety, and Obsessive Compulsive Disorder.

Defendant argues that the record clearly shows that Plaintiff failed to provide "needed care" to his spouse as a matter of law, and thus contends that Plaintiff cannot show a violation of the FMLA based on the time he took off to care for his wife. This Court agrees.

Among other things, it is undisputed that Mrs. Hoopingarner : (1) was capable of driving herself to doctor appointments (indeed, she generally did drive herself); (2) was physically able to shower, to get up, to dress herself, to feed herself, and to drink unassisted; (3) was generally able to care for all of her basic needs; (4) testified that her treating physicians never prescribed any care to be provided by any other person and didn't direct Plaintiff to care for her in any way; (5) took care of herself for one month when Plaintiff was on FMLA leave to care for his mother; (6) lived without the care of Plaintiff for a period of approximately one year while living with another man; (7) did not believe Plaintiff needed to take any time off work to care for her, and; (8) testified that Plaintiff was "verbally and emotionally abusive." This undisputed evidence reveals that Mrs. Hoopingarner was fully capable of providing for her basic needs, that she frequently got by without any care provided by Plaintiff, and that any care Mrs. Hoopingarner desired could have been provided outside of working hours. As a result, the Court concludes that Plaintiff did not provide "needed care" for his wife, as contemplated by the FMLA. *See, e.g.,* 29 CFR § 825.124.

Plaintiff argues that he did in fact provide "needed care" to his wife, citing *Scamihorn v. General Truck Drivers,* 282 F.3d 1078 (9th Cir. 2002) in support. In *Scamihorn,* the plaintiff's father suffered from depression as the result of the murder of his daughter (plaintiff's sister). *Id.* at 1080. Although the plaintiff's father was able to feed, clothe and

bathe himself on his own, the Court held that caring for a family member encompassed caring for mental as well as physical needs. *Id.* at 1087-88. The appellate court reversed the district court's entry of summary judgment for the defendant, holding that an issue of fact existed with respect to whether the plaintiff's provided care was necessary. *Id.* at 1088-89.

*Scamihorn* is distinguishable from the instant case. In *Scamihorn,* Plaintiff's father testified that "I felt like I needed him [Scamihorn] by me full time," and that "[his son's] being there was invaluable to [his] emotional recovery." *Id.* at 1087-88. Moreover, the father's physician testified that his son's presence helped, and there was evidence in the record that Scamihorn's father was at times unable to care for his own basic needs. *Id.* at 1088.

Here, by contrast, Plaintiff's wife testified that Plaintiff was "abusive," that it was not necessary for Plaintiff to leave work to help her, her physicians never stated that Plaintiff should care for her, and there is no evidence that Plaintiff was unable to care for her own basic needs. As a result, there is no genuine issue of fact as to whether Plaintiff provided "needed care" to his wife within the meaning of the FMLA. Accordingly, Defendant is entitled to summary judgment on this issue. Specifically, the Court concludes that, as a matter of law, the time Plaintiff took off in order to allegedly care for his sick wife fails to support an FMLA interference, and/or retaliation claim.

### D. Plaintiff's Absences Due to His Own Illnesses

Plaintiff contends that he missed a number of days of work because he suffered from various maladies. When Plaintiff stayed home to care for himself he would typically call in

sick, notifying his employer that he would be out for the day. Plaintiff argues that Defendant terminated him, in part, because he stayed home sick on a number of occasions, therefore allegedly violating the FMLA.

Defendant argues that the time Plaintiff took off in order to care for himself cannot support his FMLA claims as: (1) Plaintiff (with one possible exception) failed to provide adequate notice that he was requesting FMLA leave; and (2) Plaintiff cannot show that he was in any way prejudiced by taking any FMLA-protected leave.

### 1. Did Plaintiff Give Defendant Proper Notice that He Was Requesting FMLA Leave?

Defendant argues that merely calling in sick provided insufficient notice that Plaintiff was suffering from a serious health condition, failing to put Defendant on notice that he was requesting FMLA leave. As a result, Defendant contends that, even if Defendant terminated Plaintiff in part because he took several sick days, this fact cannot support a finding that Defendant violated the FMLA.

Defendant is correct to argue that simply calling in sick fails to meet the employee notice requirements of the FMLA. *See, e.g. Andrews v. CSX Transp., Inc.,* 737 F.Supp.2d 1342, 1351 (M.D. Fla. 2010) (employer had no notice of need for FMLA leave when employee phoned in sick and later provided a doctor's note with unspecified ailments); *Burnett v. LFW Inc.,* 472 F.3d 471, 479 (7th Cir. 2006) ("[W]e have held that in the usual case, an employee's bare assertion that he is 'sick' is insufficient.").

As a result, the various 'sick' days taken by Plaintiff cannot now be used to show a violation of the FMLA by virtue of the mere fact that Plaintiff told Defendant that he was 'sick.' On the contrary, the FMLA required Plaintiff to give Everest sufficient notice such that it could determine that Plaintiff was requesting time off for a "serious health condition." *See* 29 C.F.R. § 825.302(c).

Plaintiff contends that, at times, he did provide such heightened notice. Specifically, when Plaintiff was absent from July 6 to July 9 inclusive, Plaintiff alleges that he did more than simply inform his employer that he was sick, and did in fact inform Defendant that he was suffering from a serious health condition. Among other things, Plaintiff contends that he called Everest to tell them that he was sick, that he was vomiting continuously (and also experiencing diarrhea and upset stomach), that he had been immobilized in his bathroom for an entire day, and that he was scheduled for blood work and a colonoscopy in an effort to diagnose his condition. He later went to the emergency room for treatment, and provided a doctor's note, at his supervisor's request, upon returning to work on July 12, 2010. The doctor's note indicated that he suffered from "acute gastritis."

As Plaintiff's need for time off could not have been foreseen well in advance, he was not required to give advance notice, but merely to inform his employer of his need for leave "[a]s soon as practicable." *See* 29 C.F.R. § 825.302(a)-(b). A jury could find that, with respect to Plaintiff's sickness in early July, Plaintiff both provided timely notice to his

employer of his condition, and sufficiently informed Everest that he suffered from a "serious health condition" protected by the FMLA. Indeed, Defendant appears to concede this point.[2]

Plaintiff argues further that subsequent absences were due to his continuing serious health condition of acute gastritis; thus, he claims that subsequent sick absences due to this condition should also be protected. Assuming that such absences were connected, Plaintiff still was required to give his employer notice that a subsequent absence was related to his alleged serious health condition as "the FMLA does not require employers to play Sherlock Holmes, scanning an employee's work history for clues as to the undisclosed, true reason for an employee's absence." *De la Rama v. Ill. Dep't of Human Servs.,* 541 F.3d 681, 687 (7th Cir. 2008). Thus, for days in which Plaintiff called out sick in which he failed to give Everest notice that such sickness was related to his prior condition (whether expressly or impliedly), the Court concludes that Plaintiff provided deficient notice such that he cannot now utilize these absences in support of his FMLA claims.

### 2. Was Plaintiff Prejudiced by Taking FMLA-protected Leave?

For Plaintiff to state an FMLA interference claim, he must show that his FMLA rights were interfered with. Here, Plaintiff would need to show that his absences for his early July illness[3] were used as a factor in his termination. *See, e.g., Bachelder,* 259 F.3d at 1125. In

---

[2] In its Motion for Summary Judgment, Defendant argues that Plaintiff failed to give proper notice of his request for FMLA leave with the exception of a request to take time off to care for this mother and "one exception the first week of July 2010." Defendant's Motion for Summary Judgment, at 18.

[3] As well as any other sick days that Plaintiff can show were related to his early July illness, provided that Plaintiff also properly notified Defendant that they were so related.

order to state a valid retaliation claim, Plaintiff must show that there was a causal nexus between his engaging in protected activity (taking FMLA absences) and any subsequent adverse employment action (his termination). *See, e.g., Strickland,* 239 F.3d at 1207.

Here, Everest argues that it had sufficient reason to terminate Plaintiff without regard to the sick time he took off in July. Moreover, Defendant presents affidavits of Plaintiff's supervisors stating that they did not use his early July absences (due to his illness) against him in deciding to terminate him. While Defendant may very well have had sufficient reason to terminate Plaintiff notwithstanding his early July absences, the relevant question is whether these absences were in fact used against him in making the decision to terminate his employment.

Plaintiff presents significant evidence that these absences were in fact used against him in Everest's decision to terminate his employment. Specifically, Plaintiff cites to a short email chain sent to various corporate representatives, seeking approval to terminate Plaintiff's employment. The termination request cites his attendance problems and states that Plaintiff received a corrective action notice in February, 2010, for his attendance problems, and then, since April 2010, called out sick 6 times, left early 2 times, and came in late 2 times. As four out of six of these sick days constitute Plaintiff's early July absences due to Plaintiff's acute gastritis, a reasonable juror could conclude that these absences, in part, led Everest to terminate Plaintiff's employment. As a result, summary judgment on this issue is inappropriate. Specifically, there is a genuine issue of material fact with respect to

whether Plaintiff's early July absences can support either an FMLA interference, and/or retaliation claim.

It is therefore **ORDERED AND ADJUDGED** that the Court concludes that Defendant Corinthian Colleges, Inc.'s Motion for Summary Judgment (Dkt. 14) should be granted in part, and denied in part, as stated herein.

**DONE** and **ORDERED** in Tampa, Florida on April 30, 2012.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2011\11-cv-397.msj.frm